**The below described is SIGNED.**



**Dated: July 03, 2008**    _____

**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 08-21869 |
| | (Jointly administered with Case Nos. |
| Utah 7000, L.L.C, *et al.*, | 08-21870, 08-21872, 08-22075 and 08- |
| | 22077) |
| Debtors. | |
| | |
| Address: 8758 N. Promontory Ranch Road | Chapter 11 |
| Park City, Utah 84098 | |
| | |
| Tax ID Numbers 86-0986819, 75-3148710, | |
| 86-0991146, 47-0920837, and 86-1023965 | |

**MEMORANDUM DECISION GRANTING DEBTORS' MOTION FOR AUTHORITY TO OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY, SECURED, AND PRIMING BASIS FROM PIVOTAL FINANCE, LLC**

## I.  INTRODUCTION

Before the Court is the motion filed by Utah 7000, L.L.C, *et al.* (collectively the Debtors) seeking authority to obtain $25,000,000 of postpetition financing from Pivotal Finance, LLC (Pivotal Finance) pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c) and (e), 364(c)(1) and (2), 364(d), and 364(e)[1] (the Motion).  The Motion seeks funding pursuant to the term sheet, as

_____

[1]    All future statutory citations will refer to title 11 of the United States Codes unless otherwise indicated.

modified, referred to by the Debtors as the DIP Credit Agreement and as more fully set forth in

the pleadings (Pivotal Financing).  By the Motion, the Debtors seek funding to continue operation

of their luxury master planned resort community pending filing and confirmation of a plan of

reorganization.  The Motion is supported by the Official Committee of Unsecured Creditors (the

Committee) and the Promontory Owners and Members Group (POMG).  The Motion is opposed

by Credit Suisse, Cayman Islands Branch, as Agent for the First Lien Lenders (Credit Suisse) and

the First Lien Lenders, and by the Ad Hoc Group of Second Lien Lenders and Wells Fargo Bank,

N.A. as Agent to the Second Lien Lenders (Second Lien Lenders) (collectively the Prepetition

Lenders).

      The parties have briefed the legal issues and presented evidence and argument to the

Court.  Following the evidentiary hearing the matter was taken under advisement.  After

considering the evidence, assessing the credibility of the witnesses, considering the arguments of

counsel and conducting an independent review of applicable case law, the Court makes the

following ruling.

## II.    JURISDICTION AND NOTICE

      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Determination of the Motion is a core proceeding under 28 U.S.C.§ 157(b).

Notice of this hearing has been given to all required parties pursuant to Fed. R. Bankr. P. 2002,

4001, 9014, and Bankr. D. Ut. LBR 4001-2.  All parties were given notice of the Court's

scheduling order which set the parameters of the parties' briefing and hearing presentations.

Therefore, the Court finds that notice is proper.

## III.    PRELIMINARY ISSUES

As a preliminary matter, the Court notes that none of the parties has objected to section

III. C. of the Motion that requests the Court to find that the Prepetition Lenders do not have an

interest in postpetition income or, in the alternative, authorizing the use of postpetition cash

collateral.  Based on the parties' failure to object to this relief and in light of this Court's prior

rulings, the Court finds that the postpetition income referenced in section III. C. of the Motion is

not subject to the Prepetition Lenders' liens, or to the extent any cash collateral exists, the

Debtors are authorized to use that cash collateral under § 363(c).

## IV.    STATUTORY STANDARD

The Debtors are authorized to operate their business under § 1108 and, as such, are able

to request Court approval of postpetition credit under § 364.[2]  In order to obtain Court approval

of this Motion, which requests postpetition financing on a superpriority, secured, and priming

basis under § 364(d), the Debtors must establish: (1) that they are unable to obtain credit

---

[2]        Section 364 provides:
        (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of
this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of
credit or the incurring of debt-
                (1) with priority over any or all administrative expenses of the kind specified in
section 503(b) or 507(b) of this title;
                (2) secured by a lien on property of the estate that is not otherwise subject to a
lien; or
                (3) secured by a junior lien on property of the estate that is subject to a lien.
        (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the
incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
                (A) the trustee is unable to obtain such credit otherwise; and
                (B) there is adequate protection of the interest of the holder of the lien on
the property of the estate on which such senior or equal lien is proposed to be granted.
                (2) In any hearing under this subsection, the trustee has the burden of proof on the issue
of adequate protection.

otherwise; (2) that the transaction is within the Debtors' business judgment; and (3) that the interests of primed lienholders are adequately protected.

### A.      Debtors are Unable to Obtain Financing Elsewhere

The Debtors have met their burden of showing that no alternative financing is available on any other basis.  This is the third § 364 motion for financing the Debtors have presented to the Court, and each motion has been hotly contested.  The Debtors have sought and noticed up hearings regarding financing from not only Pivotal Finance but also from Sorin Capital Management.  Mr. Karl Polen, Executive Vice President of Pivotal Group, Inc., affiliated with Pivotal Group X, who serves as the managing member of some of the Debtors, testified that the Debtors have also sought financing from Public Safety Personnel Retirement System of the State of Arizona, the Second Lien Lenders, and the First Lien Lenders.  Ongoing extensive negotiations with the First Lien Lenders and/or Credit Suisse for debtor-in-possession financing have failed to produce loan terms approved by the steering committee.  Indeed, Megan Kane, Credit Suisee's representative (Ms. Kane), had no suggestions as to an alternative source of debtor-in-possession financing.  In addition to these parties, Mr. Polen contacted JPMorgan Chase and another entity about providing financing but neither was interested.  Both Mr. Polen and Mr. Greenfield, attorney for the Debtors, testified that the Pivotal Financing is the best financing package that has been offered to the Debtors.  The evidence has also shown that the only debtor-in-possession financing offered by any lender to these Debtors would require a senior lien on the Debtors' assets and, therefore, would entail priming the Prepetition Lenders.  The Court finds that there is sufficient evidence establishing that the Debtors have made a reasonable effort to seek other sources of credit and that the Debtors have been unable to obtain credit otherwise.

B.     **The Transaction Is Within the Debtors' Business Judgment**

The Debtors have also established that the decision to seek Court approval of the Motion

is within their sound business judgment.  Much has been made of the fact that Pivotal Finance is

controlled by an insider of some of the Debtors and that Mr. Polen and Mr. Najafi, the Chief

Executive Officer of Pivotal Group, Inc., are employees of Pivotal Group, Inc. and were also

responsible for negotiating and approving the Pivotal Financing on behalf of the Debtors.  Credit

Suisse has argued that this insider financing requires the Debtors to meet a heightened standard of

proof that the transaction is inherently fair and in good faith.  Even if the Court agreed and

adopted a heightened standard, the Court finds that the heightened standard has been met.  Mr.

Polen and Mr. Najafi were candid about their dual roles and the evidence shows that the parties

made sufficient efforts to protect their respective interests.  For example, Pivotal Finance and the

Debtors retained and were advised by separate legal counsel.  Additionally, Mr. Najafi testified

that the Pivotal Financing was discussed with other members of senior management teams,

including Richard Garner, and that these individuals were involved in the review process that led

to the final decision to accept the Pivotal Financing.  The Committee as well as the POMG have

had extensive negotiations with the Debtors and with Pivotal Finance, and many modifications

and concessions in the Pivotal Financing terms have been reached as a result.  Because of this

inclusive negotiation and the various modifications, both creditor groups now support the Motion.

Mr. Polen, Mr. Najafi, and Mr. Greenfield testified at length regarding both the economic

and non-economic factors they all considered in deciding to accept the Pivotal Financing and why

these factors weighed in favor of the Debtors accepting this financing over other financing offered

by, for example, Credit Suisse.  Although not an exhaustive list, some of these factors are as

follows:

1.   The higher interest rate in the Pivotal Financing was offset by the professional fees and the cost of the CRO as proposed in Credit Suisse's financing package.
2.   The Pivotal Financing provides funding for a longer period of time and there is more money available to the Debtors.
3.   The Pivotal Financing only allows the lender to seek stay relief if the Debtors are in default.
4.   The Credit Suisse proposal gave Credit Suisse the ability to object to the Debtors' proposed plan of reorganization regarding its own treatment and the treatment of other creditors.  The Pivotal Financing does not have a similar provision.
5.   Debtors have a longer period of time to propose a plan and fewer restrictions on that proposal under the Pivotal Financing than they would under the Credit Suisse proposal.
6.   After reviewing both proposals, the Debtors have found that the representations, warranties, affirmative and negative covenants, and conditions precedent to closing are generally more favorable in the Pivotal Financing.
7.   The bankruptcy estate will have greater ability to assert claims and defenses against creditors under the Pivotal Financing.

All parties acknowledge that the Debtors need funds to maintain business operations.  The

Pivotal Financing provides the Debtors with sufficient capital to operate the business for a period

of time, and it allows the Debtors time to propose a plan of reorganization.  Yet, it does not

provide so much financing that the Debtors are able to continue to operate *ad infinitum*.  The

weight of the evidence demonstrates that the Debtors have exercised sound business judgment in

accepting the Pivotal Financing.

### C.   The Interests of the Prepetition Lenders Are Adequately Protected

Section § 364(d) also requires the Debtors to show that the interests of the primed lien

holders are adequately protected.  The Debtors have the burden of proof on the issue of adequate

protection.  In *O'Connor*, the Tenth Circuit wrote: "The whole purpose in providing adequate

protection for a creditor is to insure that the creditor receives the value for which the creditor

bargained prebankruptcy.  In determining these values, the courts have considered 'adequate

protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis."[3]  The

existence of an equity cushion is, as the Ninth Circuit has stated, "the classic form of protection

for a secured debt..."[4]  Here, the Debtors maintain that the value of the collateral is at least

$561,600,000 as reported in Joseph Calvanico's (Mr. Calvanico) expert report.  Mr. Calvanico is

a certified general appraiser employed as a Director of Midwest Property Tax and Valuation

Services at Grant Thornton LLP.  Mr. Calvanico estimated the market value of the real and

personal property using a going concern valuation.  Credit Suisse maintains, however, that

liquidation is the appropriate valuation method.  The Court has reviewed the relevant case law

and finds little support for Credit Suisse's argument.[5]  Additionally, although it is early in the case,

there is no indication that the Debtors, or any other party, will propose a liquidating plan or

request any form of liquidation.  The very purpose of the Pivotal Financing is to provide the

---

[3]    *Dallas Bank, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396-97 (10th Cir. 1987) (internal citations omitted).

[4]    *Pistol v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984).

[5]    Credit Suisse has cited to the following cases in support of its position: *In re Demakes Enterprises, Inc.*, 145 B.R. 362 (Bankr. D. Mass. 1992) (adopting liquidation value instead of fair market value to resolve the extent of adequate protection necessary to avoid relief from the automatic stay); *In re Robbins*, 119 B.R. 1 (Bankr. D. Mass 1990) (holding that continued operation of mortgaged property does not justify using a fair market valuation when determining adequate protection for stay relief purposes);  *In re Tenney Village Co. Inc.*, 104 B.R. 562 (Bankr. D.N.H. 1989) (discussing the appropriateness of using a liquidation versus a going concern valuation); *In re THB Corp.*, 85 B.R. 192 (Bankr. D. Mass. 1988) (adopting a liquidation standard to value collateral for purposes of establishing whether there was sufficient adequate protection to justify the use of cash collateral); *In re Phoenix Steel*, 39 B.R. 218 (D. Del. 1984). It should be noted that the First Circuit criticized these opinion, with the exception of *Phoenix Steel*, in *Winthrop Old Farm Nurseries, Inc. v. New Bedford Institution for Savings (In re Winthrop)*, 50 F.3d 72 (1st Cir. 1995) indicating that liquidation value should not be used in all circumstances but that a flexible approach should be adopted so that a bankruptcy court can "adopt in each case the valuation method that is fairest given the prevailing circumstances." *Id.* at 75-76.

Debtors with sufficient funds to allow them to continue to operate the business and propose a

plan of reorganization.  To further complicate this proposed use of a liquidation valuation, none

of the parties have come forward with any evidence establishing a liquidation value of the

property.  There is simply no factual basis and scant legal authority supporting the use of a

liquidation value.

The Debtors propose to provide adequate protection to the secured creditors for the

priming of their liens by (a) proving that a sufficient equity cushion exists to protect the creditors,

(b) providing a junior lien on an additional 244.94 acres of real property described as out parcels

not previously provided as security to creditors, and (c) fixing the dates by which a plan of

reorganization will be filed and confirmed.

### 1.    Equity Cushion

To determine if an equity cushion sufficient to protect the primed secured creditors is

present, the amount of the debt owed by the Debtors must be established.  Solely for the purposes

of this Motion and without prejudice to a later determination of the exact amount of debt owed, it

appears uncontested that the following encompasses the debt owed for the purposes of

establishing adequate protection:

Approximately $6,000,000 owed to the Mountain Regional Water SSD;

Approximately $500,000 owed to Brows/Stembridge and mechanics' liens;

Approximately $25,000,000 that would be owed to Pivotal Finance if the Motion is

granted;

Approximately $313,000,000 owed to the First Lien Lenders projected to the end of

January 2009;

Approximately $87,000,000 owed to the Second Lien Lenders projected to the end of

January 2009.

The total debt therefore reaches approximately $431,500,000.

The only appraisal presented to the Court to establish the value of the Debtors' assets was

that received from Mr. Calvanico.  Mr. Calvanico valued the current market value of the Debtors'

high-end second home subdivison that is 40% sold and with substantial infrastructure in place at

$560,000,000, and also valued the Debtors' personal property at $1,600,000 for a total valuation

of $561,600,000.  Included in that valuation are 244.94 acres of property previously

unencumbered by the First Lien Lenders' security interest, which Mr. Calvanico valued at

$13,000,000.

Mr. Polen testified that in addition to the property appraised by Mr. Calvanico, the

Debtors have an additional income stream from Utah 7000 Realty, the sale of cabin construction

services, and from notes receivable at a net present value of between $32,500,000 and

$42,500,000.  Ms. Kane, Credit Suisse's representative, testified that Credit Suisse has no opinion

regarding the value of the Debtors' assets.

Credit Suisse, although not presenting a competing appraisal of the Debtors' assets,

provided evidence that disputed various aspects of Mr. Calvanico's and Mr. Polen's valuation

estimates.  Credit Suisse's witness, Ronald Greenspan (Mr. Greenspan), an attorney employed as

Senior Managing Director in the Corporate Finance and Restructuring practice of FTI Consulting,

disputed five areas of Mr. Calvanico's appraisal and suggested that each alleged error could be

quantified by a specific amount that would result in a reduction of the proffered values of the

Debtors' assets.

The first error alleged by Mr. Greenspan related to lot pricing. The Count finds, based on the credible testimony supplied by Richard Sonntag (Mr. Sonntag), the Managing Director of the Debtors, and Mr. Calvanico's testimony regarding lot valuation, expected sales prices of lots, his valuation methodology, and sales incentives that were accounted for in the costs of sale, that reducing the Calvanico appraisal because of alleged errors in lot pricing is inappropriate.

Likewise, Mr. Greenspan's criticism based upon an alleged calculation error because 2% lot price inflation was erroneously applied in 2008 was credibly explained by Mr. Calvanico, and the Court makes no reduction in the appraisal on account of alleged improper lot price inflation.

Mr. Greenspan challenged assertions regarding a valuation projected from conversion of the current type of club memberships to equity memberships. The Court finds Mr. Calvanico's assumptions and model projecting the amount to be realized from future conversion of memberships into equity in order for members to preserve anticipated appreciation in the memberships, and the calculations included in the appraisal, to be credible and, therefore, makes no reduction in the valuation on account of equity conversion of club memberships.

Mr. Greenspan also disputed Mr. Polen's representations regarding the present value of the revenue stream from the realty operation of Utah 7000 Realty, the sale of cabin construction services, and of various notes receivable. The Court finds Mr. Polen's testimony regarding the value of these assets to be credible and no adjustment will be made.

The appropriate discount rate to be applied was raised by Mr. Greenspan, challenging the discount rate Mr. Calvanico applied to projected cash flow to reduce it to net present value. Mr. Calvanico applies a discount rate of 8.75% plus 1% for the effective property tax rate totaling 9.75%. Mr. Greenspan asserts an improper discount rate was applied because Mr. Calvanico

utilized the discount rate for first-class and substantially leased office buildings, shopping malls,

apartments, and industrial buildings, and that such a rate is inapplicable to the Debtors'

speculative land development.  Had the proper rate been used, Mr. Greenspan asserts, the

appropriate discount rate would be an average of 17.21% causing an adjustment of $91.6 million.

However, the Court finds that such an adjustment fails to take into account the substantial

infrastructure already built into the development, the entitlements already granted, and the 40%

sold-out status.

Mr. Calvanico's calculations considered the highest and best use for the property, a 15-

year absorption rate for the Debtors' development, that the development is partially completed

with substantial infrastructure and entitlements in place, and that a portion of the development is

still raw land.  Using a composite of several different criteria, he selected a blended discount rate

of 8.75% + 1%.  Mr. Calvanico did acknowledge that a $40,000,000 correction may be

appropriate to adjust for the appropriate convention to arrive at net present value.  Based on this

testimony, the Court finds that an upward adjustment in the discount rate of 1% is appropriate.

Therefore, the Court finds that the applicable total discount rate is 10.75%.  Applying that rate,

the Court finds the value of the Debtors' real property to be $526,000,000.  Together with the

Debtors' personal property valued at $1,600,000 and additional income streams from Utah 7000

Realty, the sale of cabin construction services, and notes receivable totaling a net present value of

$32,500,000, the total current market value of the Debtors' assets at this time, and valued for this

purpose, is $560,100,000.

Therefore, in consideration of the approximate total debt of $431,500,000, the Court finds

that a substantial equity cushion exists.  The Court further finds that such an equity cushion

presents a significant protection for the Prepetition Lenders.[6]

### 2.    Additional Real Property Collateral

The Court need not determine whether this equity cushion alone is sufficient to provide

the Prepetition Lenders adequate protection because the Debtor is providing additional adequate

protection.  The Prepetition Lenders will be granted a lien on the 244.94 acres of previously

unencumbered property.  Credit Suisse argues that the Debtors have consistently maintained at

prior hearings that this property was only worth $1,400,000 and that the Debtor should be

judicially estopped from asserting any other valuation.  The Court has reviewed the transcript of

the prior hearings and notes that the $1,400,000 valuation was based on the sale price of the

property and that this was the only information available to the Debtors regarding its value at the

time.  But now, the Debtors have provided to the Court the expert report of Mr. Calvanico who

has valued the out parcels at approximately $13,000,000.  Even when this amount is discounted

by an additional 1% from Mr. Calvanico's appraisal, it still provides the Prepetition Lenders with

---

[6]    As stated in *O'Connor,* "value is the linchpin of adequate protection, and since value is a
function of *many* factual variables, it logically flows that adequate protection is a question of fact."
*O'Connor,* 808 F.2d at 1397 (emphasis added).  This Court has engaged in such a process by reviewing
the credibility of the witnesses and the evidence presented.  In addressing this fact-intensive process, one
court has summarized the factual findings of numerous other courts indicating that "[a]ccording to the well-
researched case of *In Re McKillips* [ ], case law almost uniformly concludes that: (1) an equity cushion of
twenty percent (20%) or more constitutes adequate protection; (2) an equity cushion of less than eleven
percent (11%) is insufficient; and (3) a range of twelve percent (12%) to twenty percent (20%) has divided
the Courts."  *In re C.B.G. Ltd.,* 150 B.R. 570, 573 (Bankr. M.D. Pa. 1992) (citing to *In re McKillips,* 81
B.R. 454 (Bankr. N.D. Ill. 1987)).

significant additional collateral to protect their interests.  The Prepetition Lenders will be granted a security interest in this property providing them even more adequate protection.

### 3. Additional Adequate Protection

The Prepetition Lenders will also maintain liens on their collateral.  The Prepetition Lenders will be given replacement liens in the collateral.  The Prepetition Lenders will be granted a priority administrative expense claim.  The Debtors have also provided that a plan of reorganization will be filed and confirmed by a fixed date.  Should this not occur, the Prepetition Lenders may move for a determination that they are no longer adequately protected.  Collectively, the Prepetition Lenders are receiving measurable additional protection to adequately protect their interests.

### 4. Additional Adequate Protection for the Second Lien Lenders

The Second Lien Lenders have requested that their attorney fees related to this filing, which they initiated as to certain of the Debtors as an involuntary petition, not only be added to their claim, but paid from the $25,000,000 sought by this Motion.  The Court finds no factual or legal reason to do so, and the objection of the Second Lien Lenders to the Motion on this basis is overruled.

### D. Good Faith

The Court finds that the Debtors have shown that Pivotal Finance has extended credit to the Debtors in good faith pursuant to § 364(e).  There has been no evidence provided to the Court that Pivotal Finance has engaged in fraud, has attempted to take unfair advantage of other potential lenders or the Debtors, or that Pivotal Finance has colluded with the Debtors.  The evidence is to the contrary and actually shows an arm's-length transaction between the parties.

The parties employed separate legal counsel to advise them.  Furthermore, the Debtors and

Pivotal Finance have not been the only parties involved in producing this final financing package

such that collusion might be a concern.  Mr. Polen and Mr. Najafi testified that both the Debtors

and Pivotal Finance made concessions after the Committee and the POMG objected to the

original terms of the financing.  Mr. Greenfield testified that this is the most debtor-favorable DIP

financing he has ever seen.  It is also telling that the Committee and the POMG, both comprised

of unsecured creditors, support the Pivotal Financing.

## V.   CONCLUSION

For the reasons set forth herein, the Court hereby

**OVERRULES** the objections to the Motion asserted by Credit Suisse and the Second

Lien Lenders;

**GRANTS** the Debtors' Motion for $25,000,000 in debtor-in-possession financing

according to the term sheet, as amended; and

**ORDERS** the Debtors to submit a separate Order consistent with this Memorandum

Decision.



---------------------------------------------END OF DOCUMENT---------------------------------------

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION GRANTING DEBTORS'**

**MOTION FOR AUTHORITY TO OBTAIN POSTPETITION FINANCING ON**

**SUPERPRIORITY, SECURED, AND PRIMING BASIS FROM PIVOTAL FINANCE,**

**LLC** will be effected through the Bankruptcy Noticing Center to each party on the attached

service list.



**Debtors**
Utah 7000, LLC
Utah 7000 Capital, LLC
Utah 7000 Development, LLC
Utah 7000 Cabins, LLC
Utah 7000 Realty, LLC
8758 North Promontory Ranch Road
Park City, UT 84098

Karl Polen, EVP
Utah 7000, L.L.C.
2555 East Camelback Road, Suite 700
Phoenix, AZ 85106
kpolen@pivotalgroup.com

**Debtors' Counsel**
Danny C. Kelly
Stoel Rives LLP
One Utah Center
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
dckelly@stoel.com
djjordan@stoel.com

Eve H. Karasik
Gregory K. Jones
K. John Shaffer
Robert A. Greenfield
Stutman Treister & Glatt Professional Co.
1901 Avenue of the Stars 12th Floor
Los Angeles, CA 90067
rgreenfield@stutman.com
ekarasik@stutman.com
gjones@stutman.com
jshaffer@stutman.com

**Petitioning Creditors**
Stanfield Bristol CLO
Stanfield Modena CLO, Ltd.
c/o The Bank of New York
Attn: Chris Koscinski
601 Travis Street, 17th Floor
Houston, TX 77002

Stanfield Veyron CLO, Ltd.
c/o The Bank of New York
Attn: Daniel Drake
601 Travis Street, 17th Floor
Houston, TX 77002

Stanfield Daytona CLO, Ltd.
c/o The Bank of New York
Attn: Charles Janz
601 Travis Street, 17th Floor
Houston, TX 77002

Stanfield Carrera CLO, Ltd.
c/o US Bank, NA
Corporate Trust Department
One Federal Street, 3rd Floor
Boston, MA 02110

XL Re Europe Limited
c/o Mellon Securities Trust Co.
Attn: Christine Nicodemus
120 Broadway, 13th Floor
New York, NY 10271

Sorin Master Fund, Ltd.
c/o Ogier Fiduciary Services (Cayman) Ltd.
Queensgate House
South Church Street
Grand Cayman, Cayman Islands
George Town Grand Cayman
British West Indies

**Petitioning Creditors' Counsel**
Amy Vanderwal
Ropes & Gray
1211 Avenue of the Americas
New York, NY 10036-8704
mark.somerstein@ropesgray.com
amy.vanderwal@ropesgray.com

Ira S. Dizengoff
Kenneth A. Davis
Akin Gump Strauss Hauer & Feld LLP
590 Madison Ave.
New York, NY 10022-2524
idizengoff@akingump.com
kdavis@akingump.com

Kenneth L. Cannon, II
Durham Jones & Pinegar
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
kcannon@djplaw.com

**U.S. Trustee**
Laurie A. Cayton
United States Trustee
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
laurie.cayton@usdoj.gov
james.gee@usdoj.gov

**Committee of Unsecured Creditors**
Bill Hart
Wolverine LLC
P.O. Box 1666
Park City, UT 84060

Philip Carlucci
200 Long Island Ave.
Wyandanch, NY 11798

Paul Benson
6040 Mountain Ranch Drive
Park City, UT 84098

Nevi Brooke
William Brooke
533 Brentwood Lane
Bountiful, UT 84010

Mark W. Briscoe
P.O. Box 980541
Park City, UT 84098

**Counsel for Committee of Unsecured Creditors**
J. Thomas Beckett
Parsons Behle & Latimer
201 S. Main St., Suite 1800
Salt Lake City, UT 84111
tbeckett@pblutah.com

**Governmental Entities**
Taxpayer Service Division
Utah State Tax Commission
Attn: Bankruptcy Unit
210 North 1950
Salt Lake City, UT 84134-3340

Securities Exchange Commission
Attn: Merri Jo Gillette, Regional Director
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604-2908

Internal Revenue Service
Attn: Special Procedures, Mail Stop 5021
50 South 200 East
Salt Lake City, UT 84111

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Utah Department of Workforce Services
Collections – Bankruptcy
140 East 300 South
P.O. Box 45288
Salt Lake City, UT 84145-0288

Stephen W. Lewis
State of Utah
Office of the Attorney General
160 E. 300 South, #500
P.O. Box 140874
Salt Lake City, UT 84114

**First Lien Group**
Thomas Lynch
Eleven Madison Avenue
New York, NY 10010

**Counsel for First Lien Group**
Paul Walker
Richard Havel
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
**Counsel for Credit Suisse**

Annette Jarvis, Esq
Scott Cummings, Esq.
Ray Quinney & Nebeker
36 South State Street, Suite 1400, PO Box45385
Salt Lake City, UT 84111-1478
**Counsel for Credit Suisse**

**Second Lien Group**
Wells Fargo Bank N.A.
Corporate Trust Services
MAC N9311-110
625 Marquette Avenue
Minneapolis, MN 55479

**Counsel for Second Lien Group**
Kenneth L. Cannon II
Durham Jones & Pinegar
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
**Counsel for Wells Fargo Bank, N.A.**

Mark R. Somerstein
Amy E. Vanderwal
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
idizengoff@akingump.com
kdavis@akingump.com
**Counsel for Wells Fargo Bank, N.A.**

Ira S. Dizengoff
Mary Masella
Akin Gump Strauss Hauer & Feld LLP
590 Madison Ave.
New York, NY 10022-2524
**Counsel for Wells Fargo Bank, N.A.**

**Forty Largest Unsecured Creditors for
Utah 7000, LLC, Utah 7000 Development, LLC
and Utah 7000 Capital, LLC**
Ames Construction
3737 West 2100 South – West
Valley City, UT 84120

Double P Construction
P.O. Box 937
Kamas, UT 84036

Jack Johnson Company
1777 Sun Peak Drive
Park City, UT 84098

Park City Construction, Inc.
8500 Parleys Lane
Park City, UT 84098

Zions Credit Corporation
P.O. Box 26536
Salt Lake City, UT 84126

CSE & Associates
20645 N. Pima Road
Scottsdale, AZ 85255

Questar Gas
P.O. Box 45841
Salt Lake City, UT 84139

Rocky Mountain Power
1033 NE 6th Avenue
Portland, OR 97256

GMAC Commercial Finance
P.O. Box 403058
Atlanta, GA 30384

Greenhaus, Inc.
2660 First Avenue
San Diego, CA 92103

Mountain Regional Water
P.O. Box 982320
Park City, UT 84098

Printers, Inc.
2185 South 900 East
Salt Lake City, UT 84106

Sysco Intermountain Food
P.O. Box 27638
Salt Lake City, UT 84127

Doubledown Media, LLC
240 West 35th St., 11th Floor
New York, NY 10001

Oakers Builders, Inc.
582 South 120 West
Ivins, UT 84738

Phil Carlucci
200 Long Island Avenue
Wyandanch, NY 11798

The McWhorter Family Trust
53 Riley Ranch Road
Carmel, CA 93923

Four-B Development
3 Ocean Ridge Drive
Newport Coast, CA 92657

NNN Summit Watch
3165 Paysphere Circle
Chicago, IL 60674

Susan Gillett
14627 North 65th Place
Scottsdale, AZ 85254

Robert Summerour
5173 Hallwood
Riverside, CA 92506

Bill Hart
P.O. Box 1666
Park City, UT 84060

Zamir Tarmu
P.O. Box 684028
Park City, UT 84068

Michael Jacobson
1737 Mohawk Lane
Ogden, UT 84403

Rod Cullum
8408 E. Shea Blvd. #D-100
Scottsdale, AZ 85260

Greg Thomas
611 1st Avenue
South Tierra Verde, FL 33715

Brooke Horan
P.O. Box 4526
Park City, UT 84060

H. McGuire "Mac" Riley
6733 Lee Highway
Arlington, VA 22205

Mark Esbensen
125 Del Valle Dr.
Fallbrook, CA 92028

Julie Bullen
299 S. Main Street, #2420
Salt Lake City, UT 84111

Leonard Marek
7950 Kugler Mill Road
Cincinnati, OH 45243

Kim & Kelly Stimpson
P.O. Box 9558
Lakespell, MT 59904

Steven Martin
66 Camden Rd., NE
Atlanta, GA 30309

Suzette Tse
12 Timor
Sea Newport Coast, CA 92657

Stephen Christensen
975 E. Alpine Rd.
Alpine, UT 84004

Vincent Mascatello
1076 Bellview Rd.
McLean, VA 22102

Wade Peabody
P.O. Box 521474
Salt Lake City, UT 84152

Marilyn Brown
2525 N. Canyon Rd.
Provo, UT 84604

Nevi & William Brooke
P.O. Box 980841
Park City, UT 84098

Randolph Abood
350 Central Park West, #151
New York, NY 10025

**Creditors and Parties Requesting Notice**
Robert B. Lochhead
Jonathan O. Hafen
Parr Waddoups Brown Gee & Loveless
185 South State Street, Suite 1300
Salt Lake City, UT 84111
rbl@pwlaw.com
joh@pwlaw.com
**Counsel for CSE & Associates dba CSE at Promontory**

David W. Overholt
Richer & Overholt, P.C.
901 West Baxter Drive
South Jordan, UT 84095
doverholt@rsolaw.com
abachman@rsolaw.com
**Counsel for Sysco Intermountain Food Services, Inc.**

George W. Pratt
Jones, Waldo, Holbrook & McDonough
170 South Main Street, Suite 1500
Salt Lake City, UT 84101-1644
gpratt@joneswaldo.com
**Counsel for Steven D. Martin**

Michael P. Coury
Farris Mathews Branan, et al.
40 S. Main Street, Suite 2000
One Commerce Square
Memphis, TN 38103
**Counsel for Leonard Marek**

Susan M. Freeman
Lewis and Roca
40 North Central Avenue
Phoenix, AZ 85004-4429
sfreeman@lrlaw.com
**Counsel for Pivotal Group, Inc.**

Jeffrey L. Shields
Callister Nebeker & McCullough
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, UT 84133

Blake D. Miller
Miller Guymon, P.C.
165 Regent Street
Salt Lake City, UT 84111
**Local Counsel for POMG**

Jeffrey L. Shields
Callister Nebeker & McCullough
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, UT 84133
jlshields@cnmlaw.com
njpotter@cnmlaw.com

Steven G. Loosle
Kruse Landa Maycock & Ricks, LLC
136 East South Temple, Suite 2100
P. O. Box 45561
Salt Lake City, Utah 84145-0561
sloosle@klmrlaw.com
**Counsel for Mountain Regional Water Special Services District**

John F. Higgins, Esq.
**James Matthew Vaughn, Esq.**
Joshua W. Wolfshohl, Esq.
Porter & hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002
Counsel to Promontory Owners & Members

David R. Kuney, Esq.
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005

Matthew M. Boley
Parsons Kinghorn Harris
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111

Kim & Kelly Stimpson
4687 Sunningdale Dr.
Belden, MS 38826

Nevi & William Brooke
Wade & Kathrine Peabody
Bonnina Humphrey
Justin, Heather, & Callie Brooke
533 South Brentwood Ln.
Bountiful, UT 84010

Judith Meshorer
Trustee of Judith Meshorer Trust
6300 N. Sagewood Dr. SU H106
Park City, UT 84098

Vincent & Marie Mascatello
1076 Bellview Rd.
McLean, VA 22102

Marc Gurvitz
Trustee of Marc Gurvitz Living Trust
27727 Pacific Coast Hwy
Malibu, CA 90265

Susan DeFoor
5173 Hallwood
Riverside, CA 92506

VS Ridge, LLC
Steve & Vicki Christensen
975 East Alpine Blvd.
Alpine, UT 84004

Suzette & Chiyung Tse
Trustees of the Tse Family Trust
12 Timor Sea
Newport Coast, CA 92657

Kim R. Wilson
P. Matthew Cox
Snow, Christensen & Martineau
10 Exchange Place, 11th Fl.
Salt Lake City, UT 84111

Philip R. Rudd
Kutuk Rock LLP
8601 North Scottsdale Road, Suite 300
Scottsdale, AZ
philip.rudd@kutakrock.com
**Counsel for Public Safety Personnel Retirement System**

Bruce H. Shapiro
Shapiro Partridge PLC
331 South Rio Grande Street, Suite 302
Salt Lake City, UT 84101
bshapiro@shapiroclaw.com
akoudriachova@shapiroclaw.com
**Counsel for Amos Madanes**

Michael W. Homer
Brian D. Bolinder
Suitter Axland, PLLC
8 East Broadway, Suite 200
Salt Lake City, UT 84111
mhomer@sautah.com
bbolinder@sautah.com
**Counsel for Ames Construction, Inc.**

Mark O. Morris
SNELL & WILMER
15 West South Temple, Suite 1200
Beneficial Tower
Salt Lake City, UT 84101
Facsimile: (801) 257-1800
mmorris@swlaw.com
**Special Counsel for Debtors**